UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERRY F. LAMOND,
                        Plaintiff,

       -against-                                    5:06-CV-0838 (LEK)

MICHAEL J. ASTRUE, *Commissioner*
*of Social Security*
                        Defendant.

## MEMORANDUM-DECISION and ORDER

**I.     INTRODUCTION**

On September 9, 2003, Plaintiff Terry F. Lamond ("Plaintiff") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Plaintiff alleges that he has been unable to work due to disability since June 10, 2001. Plaintiff's application was denied on December 26, 2003. Subsequently, Plaintiff filed a timely written request for a hearing on January 30, 2004. Two hearings were held on February 17, 2005 and July 19, 2005. The Administrative Law Judge held that Plaintiff was not under disability, and, as a result, the Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, commenced this action on July 7, 2006. Dkt. No. 1. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). Both Plaintiff and Defendant move for judgment on the pleadings. Dkt. Nos. 9; 12.

**II.    BACKGROUND**

**A. Medical Background**

Plaintiff was born on December 28, 1963. Pl's Brief (Dkt. No. 9) at 4. In the past, he has worked as an auto body person, floor maintenance worker, laborer, parts washer, press operator, material handler, and warehouse maintenance worker. R. at 107, 214-15. Plaintiff possesses a General Equivalence Diploma ("GED"); and as of 2005, was enrolled in the Keever Community

College studying criminal justice. R. at 48. Plaintiff alleges disability stemming from ulcers on his feet, lymphedema, venous statis, and memory problems from alcohol dependency. R. at 214. According to Plaintiff, these conditions cause swelling and infections in his legs which make it so he cannot stand or sit for extended periods of time. R. at 214. Plaintiff claims that these conditions first bothered him in 1994, and alleges that, due to these conditions, he has been unable to work since July 10, 2001. Pl's Brief at 3.

The Court will briefly summarize the relevant record and opinion evidence contained in the Administrative Transcript.[1] See Dkt. No. 7. On June 11, 2001, Plaintiff was admitted to the A.L. Lee Memorial Hospital, under the care of Dr. Ramachandran, for treatment of an ulcer. R at 235. Plaintiff returned to the hospital on July 12, 2001 for treatment of cellulitis of the left ankle, was treated by Dr. Malhotra, and discharged on July 16, 2001. R. at 242-43. Plaintiff filed his first disability application on September 4, 2001. R. at 106. As a result of this application, the New York State Office of Temporary and Disability Assistance (the "State Agency") had Dr. Ganesh examine Plaintiff on September 24, 2001. R. at 275. Dr. Ganesh diagnosed Plaintiff with a partially healed ulcer and lymphedema. R. at 279.

Dr. Wilson, Plaintiff's treating physician, specializes in internal and geriatric medicine. R. at 369. Plaintiff has been seeing Dr. Wilson since 1999 for chronic leg swelling, recurrent ulcers, and infections in his lower legs. R. at 405. On November 26, 2001, Dr. Wilson wrote a letter to the State Agency opining that Plaintiff was permanently disabled due to lymphedema and recurrent ulcerations on the left foot. R. at 280. Dr. Finley, a non-examining review physician, submitted a medical advice statement at the request of the New York State Office of Temporary and Disability Assistance on November 28, 2001. R. at 281. Dr. Finley opined that Plaintiff was able to work, capable of standing and/or walking for at least 2 hours per day and sitting for at least 6 hours per

---

[1]Citations to "R" refer to the Administrative Transcript. Dkt. No. 7.

day. R. at 281. On December 4, 2001, Plaintiff underwent a residual functional capacity ("RFC")[2] assessment, which found that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and could push and/or pull with limitations. R. at 283. On December 18, 2001, a medical consultant submitted a review of the RFC assessment and opined that Plaintiff's assessment was "not reasonable and/or supported by evidence in the file." R. at 291.

The following year, Dr. Wilson prescribed Plaintiff a lymphedema management program on May 31, 2002. R. at 296. Plaintiff began the program on June 13, 2002 and was discharged on August 2, 2002 after achieving some success in reducing the swelling in his legs. R. at 298, 320.

Plaintiff again returned to the A.L. Lee Memorial Hospital on June 5, 2003 with a case of cellulitis and was treated by a triage nurse and discharged the following day. R. at 321-28. Plaintiff returned to the same hospital on Jule 23, 2003 with complaints of an infection but he refused medical treatment. R. at 334. On August 19, 2003, Plaintiff was treated at the Oswego Hospital for cellulitis and discharged the same day. R. at 335. Dr. Wilson examined Plaintiff on August 25, 2003 and determined that Plaintiff should return to the lymphedema management program. R. at 339. Plaintiff began the program on September 8, 2003 and discontinued on October 14. 2003. R. at 343, 351.

On October 21, 2003, Dr. Shapiro completed a psychiatric examination of Plaintiff at the request of the State Agency and determined that Plaintiff had no mental impairments. R. at 355. Dr. Ganesh again examined Plaintiff on October 31, 2003 at the request of the State Agency. R. at 356. Dr. Ganesh concluded that Plaintiff had "no limitation to sitting, standing, or the use of upper

---

[2] RFC is defined as the most a claimant can do after considering the effects of all his medically determinable physical and mental limitations, including those not deemed "severe." See 20 C.F.R. § 404.1545; SSR 96-8p.

3

extremities," but that he should "avoid prolonged standing, walking, and climbing." R. at 358.

On July 26, 2004, Plaintiff saw Dr. Wilson in order to have a disability form filled out. R. at 372. Plaintiff returned on October 19, 2004 to have an evaluation as well as another form filled out for his school. R. at 371. Dr. Wilson observed that Plaintiff's leg had "some dry areas . . . but nothing as severe as . . . in the past." R. at 371. On December 16, 2004, Plaintiff returned to Dr. Wilson to have another disability form filled out. R. at 371. Dr. Wilson completed a medical source statement on February 8, 2005 in which he opined that Plaintiff had "room for recovery," was capable of "moderate" work stress, could sit for about 4 hours per day, and stand and/or walk for less than 2 hours. R. at 394-96. Dr. Wilson went on to report that Plaintiff could occasionally lift and carry less than 10 pounds. R. at 397. After examining Plaintiff on February 14, 2005, Dr. Wilson completed a second medical source statement in which he opined that Plaintiff was incapable of "low stress jobs," and that he could sit, stand, and/or walk about 2 hours in a day. R. at 400-02. On February 24, 2005 Dr. Wilson, in a letter to Plaintiff's attorneys, stated that Plaintiff met Listing 4.11. R. at 405-06.

Dr. Alexander, a state agency consultant, completed a medical opinion interrogatory of Plaintiff on March 23, 2005. R. at 411-13. Dr. Alexander diagnosed Plaintiff with a history of congenital lymphedema, statis ulcer, and statis dermatitis. R. at 411.

**B. Procedural History**

The relevant procedural history may be summarized as follows: Plaintiff protectively filed applications for a period of disability, DIB, and SSI on September 30, 2003. R. at 167. At that time, Plaintiff alleged disability, beginning August 15, 2003, due to bilateral congenital edema, episodes of cellulitis of the lower extremities, and ulcers of the left leg. Pl's. Brief at 2. This application was initially denied, and Lamond timely filed a request for a hearing before an Adminstrative Law Judge ("ALJ"). Id. at 2. A hearing was held via video teleconference before

4

Adminstrative Law Judge Gordon Malick on February 17, 2005 at which Plaintiff, his attorney, and Dr. Alexander were present. R. at 43. At this hearing, Plaintiff requested that his onset date be amended from August 15, 2003 to June 10, 2001, and that the record be left open to obtain additional evidence. R. at 22. The record was left open in order for Plaintiff to obtain evidence dating back to June 10, 2001. R. at 22. A supplemental hearing was held on July 19, 2005 at which Plaintiff, Dr. Alexander, and Jean Hambrick, a vocational expert ("VE"), testified. R. at 75. On Septener 19, 2005, after considering the Plaintiff's application *de novo*, the ALJ found that Plaintiff was not disabled. R. at 31. Plaintiff filed a timely request for review by the Appeals Council. Pl's Brief at 3. The ALJ's decision became the Commissioner's final decision on June 7, 2006, when the Appeals Council denied Plaintiff's request for a review. Id.

Plaintiff, through counsel, commenced this action on June 7, 2006. Dkt. No. 1. The Commissioner filed an Answer on December 20, 2006. Dkt. No. 8. Plaintiff filed a supporting brief on February 5, 2007. Dkt. No. 9. The Commissioner filed a brief in opposition on April 3, 2007. Dkt. No. 12.

### III. DISCUSSION

#### A. Legal Standard

District courts have jurisdiction to review claims contesting a final decision by the Commissioner of Social Security denying disability benefits. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or that determination is not supported by substantial evidence in the record. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance. Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Where evidence is susceptible to more than one rational interpretation, a district court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g). Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings. Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004); Rosa v. Callahan,

6

168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

Under the Act, an individual is disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

20 C.F.R. § 404.1520 details the SSA's five-step sequential analysis: in step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[3] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[4] and significantly

---

[3] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[4] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

limiting his physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) does meet or equal one or more of the Listings, the claimant shall be deemed disabled. If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's RFC allows him to perform his past work. If the answer to that inquiry is that the claimant is unable to perform his past work, the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors including the claimant's age, education, and work experience, whether the claimant could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560; Heckler v. Campbell, 461 U.S. 458, 460 (1983).

**B. Analysis**

    **1. Commissioner's Decision**

The ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits under the Act through March 31, 2006. R. at 25. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2001, the alleged onset date. R. at 25. At step two, the ALJ concluded that Plaintiff's congenital lymphedema, statis dermatitis, and episodic ulceration constitute "severe" impairments under the Act. R. at 26. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal an impairment in the Listings. R. at 26. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of medium exertion

work.  R. at 28.  Finally, at step five, the ALJ determined that Plaintiff is unable to perform any past relevant work, as defined by 20 C.F.R. §§ 404.1565 and 416.965.  The ALJ found that Plaintiff has no transferable job skills to sedentary work.  R. at 30.  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform.  R. at 30.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Act, since the alleged onset date.  R. at 31.  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

**2. Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed, and offers four arguments in support of his position.  Pl's. Brief at 1-2.  First, Plaintiff argues that the ALJ erred in his determination that Plaintiff's impairment was not of the severity that meets or equals the listings.  R. at 11.  Second, Plaintiff argues that the ALJ failed to follow the treating physician rule.  R. at 13.  Third, Plaintiff contends that the ALJ erred when he found Plaintiff capable of a limited range of medium work.  R. at 16.  Lastly, Plaintiff asserts that the vocational expert's ("VE") testimony cannot provide substantial evidence for the denial of benefits because the VE was not qualified pursuant to the SSA's <u>Vocational Expert Handbook</u>, and because the hypothetical question posed to the VE by the ALJ was not a complete and accurate assessment of Plaintiff's limitations.  R. at 17.  Each argument will be addressed in turn.

**a. The ALJ's determination that Plaintiff's impairments did not meet or equal a listed impairment is supported by substantial evidence and correct legal principles**

At step three of the analysis, the ALJ must determine whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's impairment meets or equals a listed impairment, the claimant will be found

disabled.  20 C.F.R. § 404.1520(d).  A claimant's impairment meets a listed impairment only if it satisfies all of the criteria of the listing.  20 C.F.R. § 404. 1525(c)(3); Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885, 891 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  An impairment does not meet the requirements of the Listings based only on a diagnosis, rather, a claimant must show that he has a medically determinable impairment that satisfies each criterion of the listing.  20 C.F.R. § 404.1525(d).

If a claimant's impairment does not meet the specific criteria of a listing, it may medically equal the requirements of a listing.  20 C.F.R. § 404.1526(a).  Medical equivalence may be established where a claimant does not exhibit one or more of the specific criteria of the listing, or the claimant exhibits all of the elements of the listing, but one or more of the findings is not as severe as specified by the listing.  20 C.F.R. § 404.1526(b).  In such cases, however, the claimant must provide other objective findings related to the impairment that are at least of medical equivalence to the listing criteria.  Id.  In determining whether a claimant's impairment medically equals a listing, the ALJ will consider all of the evidence in the record, except for factors of age, education, and work experience.  20 C.F.R. § 404.1526(c).  The ALJ will also consider the opinion of a medical consultant appointed by the Commissioner.  Id.  When an ALJ considers the opinion of a non-examining source, the ALJ will consider the opinion evidence along with all other evidence in the record.  20 C.F.R. § 404.1527(b).  The question of whether a claimant is disabled is one reserved for the Commissioner, and no special significance will be given to the source of an opinion on an issue reserved to the Commissioner.  20 C.F.R. § 404.1527(e).

Here, the ALJ considered all of the Listings (particularly section 4.11 which concerns chronic venous insufficiency of a lower extremity, with incompetence or obstruction of the deep venous system) and found, based on substantial evidence and correct legal principles, that Plaintiff's

impairment did not meet or equal a listed impairment. R. at 26. In so finding, the ALJ relied upon the opinion of a state agency consultant, Dr. Alexander, which is consistent with the objective medical findings contained in the record. R. at 26.

In Dr. Alexander's opinion, the objective medical evidence indicated that Plaintiff exhibited a history of congenital lymphedema, statis ulcer, and statis dermatitis. R. at 411. For listing level 4.11A, a claimant must show "extensive brawny edema involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 4.11. Extensive brawny edema is described in the Listings as:

> swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes. It is not the same thing as pitting edema. Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable. Pitting edema does not satisfy the requirements of 4.11A.

20 C.F.R. Part 404, Subpart P, Appendix 1, § G(3).

Dr. Alexander stated that "extensive brawny edema" is not documented in the medical evidence. R. at 82. While Dr. Alexander noted that Plaintiff's edema was, on singular occasions, described as "tense," "nonpitting," or as "three plus," Dr. Alexander opined that these sporadic mentions were not of the severity to meet or equal the "extensive brawny edema" description quoted above. R. at 65, 411. Dr. Alexander testified that brawny edema is typically associated with a "dry flaky, brown colored change in the skin," which is not once documented in the record. R. at 67. Dr. Alexander's opinion is consistent with other evidence in the record, which either does not mention Plaintiff's edema, or describes it as moderate, minimal, pitting, or mild. R. at 298, 320, 398.

The ALJ also concluded that Plaintiff did not meet or equal the criteria of 4.11B, which requires the presence of "superficial varicosities, statis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." 20

11

C.F.R., Part 404, Subpart P, Appendix 1, § 4.11. Dr. Alexander stated that no superficial or large varicosities are mentioned in the record. R. at 26, 411. While Dr. Alexander found some statis dermatitis, he described it as "mild." R. at 26. As for Plaintiff's ulcer, Dr. Alexander found that treating physicians "attributed the claimant's ulcer to an abrasion which became infected." R. at 27. According to Dr. Alexander, statis ulcers are caused by venous insufficiency, which limits blood flow to the skin, and Plaintiff's ulcer did not appear to be caused by venous insufficiency. R. at 27. Furthermore, the records show that Plaintiff's ulcer healed under treatment within three months. R. at 26. Thus, the ALJ determined that Plaintiff did not meet or equal Listing 4.11B for two reasons: First, Plaintiff did not exhibit superficial varicosities. R. at 26-28. Second, Plaintiff's ulcer not only healed within three months, but it also was not caused by venous insufficiency, putting it below the threshold of Listing 4.11B. R. at 26-28.

      The ALJ found that Dr. Alexander's opinion was consistent with the objective medical evidence as well as the clinical findings of treating and examining physicians. R. at 26-27. The ALJ reviewed the observations of Dr. Ramachandran, who treated Plaintiff on June 11, 2001 for an ulcer on the left ankle. R. at 27. Dr. Ramachandran documented Plaintiff's ulcer as having "no discharge, no tenderness, no surrounding erythema, no lymphangitic spread, redness or streaking from the wound." R. at 27, 235. Dr. Ramachanran went on to note that Plaintiff exhibited no "swelling or redness in the calf." R. at 235. The ALJ also considered the results of Plaintiff's venous duplex study, conducted by Dr. Meagher, and found no evidence of deep vein thrombosis. R. at 27, 274; see also 20 C.F.R. Appendix 1 to Subpart P of Part 404 § G(2) ("We will assess your limitations based on your symptoms together with physical findings, Doppler studies, other appropriate non-invasive studies, or angiographic findings.").

      The ALJ reviewed the findings of Dr. Ganesh, who examined Plaintiff on two occasions at the request of the State agency. R. at 27. At the first examination on September 24, 2001, Dr.

Ganesh observed "no cyanosis, no clubbing, and no edema" in the extremities. R. at 27, 278. Dr. Ganesh observed no significant varicosities, and only "some reddish discoloration of the lower one-third of the leg." R. at 27, 278. At the second examination on October 31, 2003, Dr. Ganesh again observed "no significant varicosities," or ulcers in Plaintiff's legs. R. at 27, 358. Dr. Ganesh diagnosed Plaintiff with congenital lymphedema, and mild venous statis. R. at 358.

The ALJ reviewed the documentation from Plaintiff's treatment in a Lymphedema Management Program from June to August of 2002. R. at 28, 298. The initial evaluation records indicate that Plaintiff had either minimal or moderate pitting edema. R. at 298. After three weeks of treatment, the program discharge records indicate that Plaintiff had a "high level of activity," and pitting edema "which diminished with treatments." R. at 320.

Finally, because the question of whether a claimant is disabled is reserved to the Commissioner, the ALJ was not bound to make a finding of disability based on the conclusions of Dr. Wilson and a medical consultant, who both opined that Plaintiff met Listing 4.11B. Pl's Brief at 12-15; R. at 405, 365; See 20 C.F.R. § 404.1525(e). Also, notably absent from the records of both Dr. Wilson and the medical consultant was documentation of "extensive brawny edema," and "superficial varicosities," required elements of Listing 4.11A and 4.11B, respectively. R. at 405, 291; see also 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.11.

Thus, the ALJ's finding that Plaintiff's impairments do not meet or equal an impairment in the Listings is supported by substantial evidence in the record and correct legal principles.

**b. The ALJ properly found that Plaintiff was capable of a limited range of medium work and correctly applied the treating physician rule**

As a consequence of determining that Plaintiff did not have an impairment which met or equaled an impairment in the Listings, the ALJ proceeded to step four of the sequential analysis. R.

at 28. At step four, the ALJ assesses whether the claimant's RFC allows him to perform his past work. 20 C.F.R. § 404.1520. When making a RFC determination, the ALJ considers the claimant's physical and mental abilities, and other symptoms that could interfere with work activities on a regular or continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp 180, 183 (N.D.N.Y. 1990).

      Here, the ALJ found, through careful consideration of the record, that Plaintiff has the RFC for a limited range of medium exertion work.[5] R. at 28. In reaching this conclusion, the ALJ considered Plaintiff's condition as well as the opinion evidence in accordance with the requirements of the Regulations. R. at 28. Specifically, the ALJ considered the opinion of Dr. Wilson, Plaintiff's treating physician, and did not give it controlling weight. R. at 29. The ALJ also considered the opinions of Dr. Finley and Dr. Alexander and gave them great weight. R. at 29. Plaintiff's assertion that the ALJ "cites no medical opinion" to support his RFC determination is plainly without merit. Pl's. Brief at 16. The ALJ cited Dr. Alexander, who opined that Plaintiff "was capable of sitting 6 hours in and 8 hour day without elevating his legs, and he had no postural limitations." R. at 29.

      Plaintiff also contends that the ALJ erroneously failed to give Dr. Wilson's opinion controlling weight. Pl's. Brief at 13. The ALJ will give controlling weight to the treating physician if his opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). When the ALJ does not give the treating physician's opinion controlling weight, the ALJ should apply the following factors to determine how much weight to afford the

---

[5]Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). It is assumed that one capable of medium work is also capable of "sedentary and light work." Id.

treating physician: the length and frequency of treatment; the nature and extent of the treatment relationship; the supportability of the opinion, the consistency of the opinion with the record as a whole; and whether the opinion is from a specialist of the relevant medical issues. 20 C.F.R. § 404.1527(d)(2).

The ALJ considered the opinion of Dr. Wilson, Plaintiff's treating physician, and determined that it was not well-supported by medically acceptable evidence, that it was inconsistent with other evidence in the record, and therefore, should not be given controlling weight. R. at 28. Specifically, the ALJ found Dr. Wilson's notes, laboratory findings, and clinical observations to be inconsistent with the findings of other treating and examining physicians. R. at 28. For example, the ALJ found that Dr. Wilson's November 26, 2001 conclusion that Plaintiff was permanently disabled was inconsistent with his own subsequent physical source statement that Plaintiff was limited to sitting less than 4 hours per day in February and July of 2005. R. at 29, 280, 396, 401.

The ALJ determined that the "severe physical limitations proposed by Dr. Wilson are not supported by objective findings." R. at 29, 280, 297, 405-06. In November of 2001, Dr. Wilson observed swelling in Plaintiff's legs as well as some ulceration of the left foot, and opined that these impairments were permanently disabling. R. at 280. These findings, however, are inconsistent with Dr. Ganesh's findings from just two months earlier that Plaintiff had "no edema" and that his ulcer was "partially healed." R. at 277-78. Dr. Wilson's conclusion that Plaintiff would be permanently disabled is further contradicted by Dr. Ganesh who, in October of 2003, observed that Plaintiff "appear[ed] to be in no acute distress," that his gait was "normal," that he could "walk on heels and toes without difficulty," and "use[d] no assistive devices." R. at 357. While Dr. Ganesh did observe some "nonpitting edema" at this visit, he noted that there was only "mild reddish discoloration," "no significant varicosities," nor did he use the "brawny" description required by the Listings. R. at 357. Dr. Ganesh diagnosed Plaintiff with congenital lymphedema and mild venous

15

statis. R. at 357. In May of 2003, Dr. Wilson noted "minimal inflammation" of the foot, and "a bit of dryness" over the toes, but suspected that it could have been caused by a fungal infection. R. at 340. In July of 2003, Dr. Wilson observed that Plaintiff's redness and swelling had decreased. R. at 341. In July of 2004, Dr. Wilson found that while Plaintiff did have some lymphedema, his circulation appeared "okay," and that his "skin look[ed] better than it had in a long time." R. at 372. Finally, Dr. Wilson opined that Plaintiff's impairments prevented him only from doing work requiring "climbing . . . bending, [and] kneeling." R. at 372.

In sum, Dr. Wilson's treatment notes are not only internally inconsistent, but also inconsistent with other record evidence. These inconsistencies constitute substantial evidence, upon which the ALJ reasonably based his conclusion that Dr. Wilson should not be afforded controlling weight. R. at 29.

The ALJ determined that the opinions of Dr. Finley and Dr. Alexander were consistent with the medical evidence, and he afforded both opinions "great weight." R. at 29. In his analysis, the ALJ cited to the opinions of Dr. Finley and Dr. Alexander which contradicted Dr. Wilson's opinion, and supplied the additional rationale for not giving Dr. Wilson controlling weight. R. at 28-29.

The ALJ weighed the correct factors in determining what weight to afford Dr. Wilson's opinion great weight. R. at 29. With regard to the extent of the treatment relationship, the ALJ noted that Dr. Wilson gave "conservative treatment for the [Plaintiff] up to three times a year," suggesting that Plaintiff's impairments did not require "extensive treatment." R. at 29. As for the "supportability" factor, the ALJ found that Dr. Wilson's opinion was conclusory and not supported by objective findings. R. at 29. As noted, the ALJ also determined that Dr. Wilson's opinion was both internally inconsistent, as well as inconsistent with the record as a whole. R. at 29.

Therefore, this Court holds that the ALJ's decision should be upheld at step four of the sequential analysis because it is supported by substantial evidence and in accordance with correct

legal principles.

### c. The Vocational Expert's qualifications

Plaintiff contends that the VE's testimony cannot provide substantial evidence for the denial of benefits because the VE was not qualified pursuant to the Social Security's Administration's Vocational Expert Handbook, which requires that the VE have "up to date knowledge of, and experience with, industrial and occupational trends and local labor market conditions." Pl's. Brief at 17.  Plaintiff alleges that because the VE's resume does not mention experience with Plaintiff's local labor market that the VE was unqualified to give testimony in this case.  Id.

A plaintiff's failure to raise objections during the hearing to the VE's testimony effectively waives any challenge to the VE's qualifications.  Haskins v. Commissioner of Social Sec., No. 5:05-CV-292, 2008 WL 5113781, at *16 (N.D.N.Y. Sep. 11, 2008); Harvey v. Astrue, No. 5:05-CV-1094, 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (citations omitted).  The record reveals that the VE testified to being familiar with jobs in the State of New York, and that Plaintiff's counsel was given the opportunity to question the VE and did not ask any questions regarding the VE's qualifications.  R. at 95-103.  Furthermore, Plaintiff did not raise an objection to the VE's qualifications in his request for review by the Appeals Council.  R. at 16; see Plante v. Astrue, No. 06-CV-972, 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009) (holding that a plaintiff has not forfeited an objection to a VE's qualifications if it was raised in a request for review before the Appeals Council).  Thus, because Plaintiff failed to raise an objection to the VE's qualifications at the hearing and did not raise this argument before the Appeals Council,  Plaintiff cannot now object to the VE's qualifications.

### d. The hypothetical question posed to the VE accurately represented Plaintiff's physical and mental impairments

Plaintiff contends that the ALJ's hypothetical question to the Vocational Expert was

17

incomplete and, therefore, cannot provide substantial evidence to support the ALJ's determination. Pl's. Brief at 17. This argument is without merit. When an ALJ presents a hypothetical to a VE, he must accurately represent the claimant's physical and mental impairments in order for the VE's response to function as reliable evidence. See De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 936 (2d Cir. 1984).

Here, the ALJ's hypothetical question accurately represented Plaintiff's impairments. R. at 93. The question was based on the ALJ's finding that Plaintiff suffered from statis dermatitis, ulceration, and cellulitis. R. at 93. Plaintiff's contention that the ALJ failed to accurately represent Plaintiff's impairments is premised on Plaintiff's assertion that the ALJ erred in determining that Plaintiff's impairments did not meet or equal a Listing and that the ALJ erroneously failed to accord Dr. Wilson controlling weight. Pl's. Brief at 18. For the reasons discussed above, these assertions are without merit. The Court holds that the ALJ presented the full extent of Plaintiff's impairments, and the VE's testimony provided a reliable basis for the ALJ's conclusions.

## IV. CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendant's Motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion for judgment on the pleadings is **DENIED** (Pl's Brief at 19); and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED: August 2, 2010

Albany, New York

Lawrence E. Kahn
U.S. District Judge